# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| LEVI ARTHUR FEDD, *Plaintiff*, v. HOMER BRYSON, *et al.*, *Defendants*. | CIVIL ACTION NO. 5:17-cv-00070-TES-TQL |

## ORDER ADOPTING ORDER AND RECOMMENDATION

Currently before the Court is the United States Magistrate Judge's Order and Recommendation [Doc. 88] on Defendants' Motion to Dismiss [Doc. 38] and Amended Motion to Dismiss [Doc. 50]. Plaintiff filed an objection to the Recommendation [Doc. 92]; therefore, Court conducts the following de novo review of the matters to which Plaintiff objects. *See* 28 U.S.C. § 636(b)(1).

## FACTUAL BACKGROUND

In his Recast Complaint [Doc. 15], Plaintiff alleges[1] that while he was incarcerated at Wilcox State Prison in Abbeville, Georgia, he was placed in a shower and forced to sleep on the shower floor for more than eight to nine hours. [Doc. 15, p. 7]. During that time, "bugs got all over [his] body" and ate holes in him. [*Id.*]. Plaintiff claims that he told prison

---

[1] Plaintiff's pleadings and other documents are difficult to decipher. Thus, the Court read the documents as liberally as possible to determine Plaintiff's claims and arguments.

staff about the bugs but received no treatment and was left "in lockdown with no out side [sic] 24 [hours] a day" for 11 to 12 months. [*Id.* at pp. 7, 13, 14, 17, 18]. In his Objection [Doc. 19] to the Magistrate Judge's preliminary screening [Doc. 16] of his Recast Complaint, Plaintiff clarified that he could not go outdoors and had no opportunity to exercise during the roughly one-year-long lockdown period. [Doc. 19, p. 5].

Plaintiff brought suit against Georgia Department of Corrections ("GDC") Commissioner Homer Bryson, former Wilcox State Prison Warden Antoine Caldwell, and several other Wilcox State Prison staff members, alleging that they knew of his injuries but failed to provide him with medical care and that they kept him in administrative segregation "with out [sic] cause." [Doc. 15, p. 10].

In its Order on the Magistrate Judge's preliminary screening, the Court determined that Plaintiff stated claims for deliberate indifference to a serious medical need under the Eighth Amendment and for due process violations under the Fourteenth Amendment. [Doc. 42].

Defendants Bryson, Palmer, Cook, Rozier, M. Williams, Caldwell, Hogan, Bray, and Whittington now move to dismiss Plaintiff's claims, arguing that Plaintiff failed to exhaust his administrative remedies. [Docs. 38, 50]. As to Plaintiff's Eighth Amendment claim, these Defendants argue that Plaintiff did not wait to receive a decision on his grievance appeal before filing suit and therefore failed to exhaust prior to bringing this action. Defendants

also argue that Plaintiff's Fourteenth Amendment claim is barred because Plaintiff did not file any grievance relating to his time in administrative segregation.

The Magistrate Judge recommends granting Defendants' Motions to Dismiss, finding that Plaintiff did not exhaust his administrative remedies for either of his claims. Plaintiff objects to these determinations. With regard to his Eighth Amendment claim, Plaintiff essentially argues that he was not required to wait until he received a final denial of his grievance before filing suit. With regard to his Fourteenth Amendment claim, he argues that administrative remedies were unavailable.

## **DISCUSSION**

### A. **Standard of Review**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The word "shall" indicates that "[e]xhaustion is mandatory under the PLRA, and unexhausted claims cannot be brought in court." *Bracero v. Secretary, Fla. Dep't of Corr.*, ___ F. App'x ___, No. 17-14278, 2018 WL 3861351, at *1 (11th Cir. Aug. 14, 2018) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007)).

In order to properly exhaust his administrative remedies, "a prisoner must complete the administrative process in accordance with the applicable grievance procedures

3

established by the prison." *Id.* (citing *Jones*, 549 U.S. at 218). In this case, the GDC Standard Operating Procedure in effect at the time of the incidents giving rise to this action required a prisoner to complete an "Original Grievance" related to a single issue or incident and present it to a prison counselor within ten days of the date he "knew, or should have known, of the facts giving rise to the grievance." [Doc. 38-3, p. 9]. The prison counselor would then forward it to the prison Grievance Coordinator. [*Id.*]. Once a grievance was dealt with at the prison level, the prisoner could file a "Central Office Appeal," and the GDC Commissioner was required to make a determination within 100 days of receipt of the appeal. [*Id.* at pp. 14-15].

Although exhaustion is generally mandatory, a prisoner is not required to exhaust remedies that are not "available" to him. *Turner v. Burnside,* 541 F.3d 1077, 1084 (11th Cir. 2008). A grievance process is unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates," (2) it is "so opaque that it becomes, practically speaking, incapable of use," or (3) "prison administrators thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S. Ct. 1850, 1859-60 (2016).

When a motion to dismiss is based on the plaintiff's failure to exhaust administrative remedies, the Court first considers "the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true." *Turner*, 541 F.3d at 1082 (11th Cir. 2008). If in doing so the Court finds

4

that Plaintiff failed to exhaust his administrative remedies, then the complaint must be dismissed. *Id.* If, on the other hand, Plaintiff's complaint cannot be dismissed at this stage, the Court must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* At this stage, Defendants "bear the burden of proving that [Plaintiff] has failed to exhaust his available administrative remedies." *Id.*

### B. Plaintiff's Eighth Amendment Claims

Defendants argue that Plaintiff failed to exhaust his administrative remedies as to his Eighth Amendment claims because he filed suit before receiving a decision on his Central Office Appeal relating to the lack of treatment for his bug bites. In his response, Plaintiff does not deny that he filed suit prior to receiving a response to his grievance appeal. Instead, he briefly relies on *Whitington v. Ortiz*, 472 F.3d 804 (10th Cir. 2007), for the proposition that "dismissal for failure to exhaust administrative remedies [was] improper though inmate did not wait until receiving final grievance response before filing complaint becaus[e] prison officials failed to respond in a timely manner." [Doc. 57, p. 5].

*Whitington* is inapposite for two reasons. First, *Whitington* is a decision from the Tenth Circuit Court of Appeals and is not binding precedent for this Court. Second, the factual differences between *Whitington* and this case render it unpersuasive. In *Whitington*, the plaintiff filed an appeal for which the Colorado Department of Corrections had 45 days to respond. 472 F.3d at 807. After waiting 196 days for a response, the plaintiff filed suit. *Id.* In finding that the plaintiff properly exhausted his administrative remedies, the court

stressed that "a prisoner cannot be required to wait indefinitely for a response to his final grievance before he may seek judicial review. That is, when prison officials fail to timely respond to a grievance, the prisoner has exhausted 'available' administrative remedies under the PLRA." *Id.* at 807-08.

In this case, the GDC Commissioner was required to respond to Plaintiff's Central Office Appeal within 100 days of receipt; however, Plaintiff waited a mere 21 days before filing the instant lawsuit. Thus, Plaintiff failed to complete the grievance process, and his Eighth Amendment claim must be dismissed at the first stage of the *Turner* analysis. Therefore, the Court **ADOPTS** the Magistrate Judge's recommendations as they apply to Plaintiff's Eighth Amendment claims.

### C. <u>Plaintiff's Fourteenth Amendment Claims</u>

Defendants also move to dismiss Plaintiff's Fourteenth Amendment claims, arguing that Plaintiff did not file any grievances relating to his year-long administrative segregation, despite the grievance process being available to him. In response, Plaintiff agrees that he failed to file a grievance for this issue but argues that the grievance process was not available to him because prison staff refused to provide him with a grievance form. Given these conflicting allegations, the Court cannot dismiss Plaintiff's claim at the first *Turner* stage and must "make specific findings in order to resolve the disputed factual issues related to exhaustion." *Turner*, 541 F.3d at 1082.

6

Defendants argue that the grievance process was clearly available to Plaintiff given that he filed seven grievances in the eight months following his shower lockdown. [*See* Doc. 38-4]. Plaintiff, on the other hand, states only that Defendant Caldwell and other Wilcox State Prison officials refused to give him a grievance form.

Plaintiff appears to allege that he was kept in administrative segregation for ten to twelve months following his shower incident, which apparently occurred sometime between September 30 and November 16, 2016.[2] Plaintiff filed three grievances with Wilcox State Prison staff following the shower incident. [Docs. 38-4]. Plaintiff withdrew the first grievance (dated December 16, 2016), pushed the second grievance (dated December 28, 2016) through the entire grievance process, and filed a third grievance (dated February 14, 2017) unrelated to the shower incident or his due process claim that was denied but not appealed. [*See id.*; Doc. 38-5].

The Court interprets Plaintiff's objection to allege that Defendant Caldwell refused him grievance forms in the two months between his second and third grievances. [Doc. 91.,

---

[2] As an exhibit to his Response to Defendants' Motion to Dismiss [Doc. 57], Plaintiff filed a grievance dated December 16, 2016, in which he complains that he "suffer for month under Rule F emergency," which can either be construed as suffering for a single month or for several months given the lack of an article before "month" and the lack of pluralization. [Doc. 57-2]. However, elsewhere in the grievance he complains that no one has "treat[ed] the open hol[e] in 11-week." [*Id.*]. This "open hole" is presumably from the bug bites Plaintiff allegedly suffered during his confinement in the shower. The shower incident therefore could have occurred anytime from one month prior to the grievance date (i.e., November 16, 2016) to nearly three months prior to the grievance date (i.e., around September 30, 2016). If this is the case, Plaintiff filed his Complaint [Doc. 1] only three to five months into his year-long administrative segregation period. It is more likely that Plaintiff's shower confinement occurred in the midst of his alleged year-long administrative segregation. Regardless, the Court's decision remains the same.

7

p. 21]. Plaintiff further alleges that because of his inability to file grievances for two months, any grievance filed after that time relating to his due process claim would have been denied on procedural grounds as untimely.[3] [Doc. 92, p. 19 ("[D]eadlines was up [sic] because Defendant Warden C[al]dwell blocked Plaintiff['s] grievances with Defendants['] help.")].

Plaintiff's argument lacks merit in light of the Eleventh Circuit's decision in *Bryant v. Rich*, 530 F.3d 1368 (11th Cir. 2008). In *Bryant*, the court determined that where an inmate is allowed to submit an untimely grievance upon a showing of good cause, he has not exhausted his administrative remedies if he fails to submit the untimely grievance and await the prison officials' decision. 530 F.3d at 1373 ("We recognize that a grievance filed after [the plaintiff's] transfer to [Georgia State Prison] would have been untimely. But the relevant grievance procedures provide inmates with the opportunity to request consideration of untimely grievances for good cause. Thus, [the plaintiff] could have exhausted his administrative remedies by filing a grievance at [Georgia State Prison] and then by showing good cause for its tardiness."). In this case, as in *Bryant*, the GDC Standard Operating Procedures allow an inmate to submit an untimely grievance, and the prison grievance coordinator "may waive the time limit for good cause" and address the grievance on its merits. [Doc. 38-3, p. 10].

---

[3] The GDC Standard Operating Procedures require prisoners to file grievances within "10 calendar days from the date the offender knew, or should have known, of the facts giving rise to the grievance." [Doc. 38-3, p. 10]. The Warden is entitled to reject a grievance if it is not timely filed. [*Id.*].

8

In this case, it does not appear that Plaintiff tried to address his due process claim in a grievance submitted at Wilcox State Prison on February 14, 2017, which apparently concerned mail and packages. [Doc. 38-4, p. 2]. There is also no evidence that he addressed the matter in grievances submitted at two other prisons during the 11 to 12 months he was allegedly kept in administrative segregation following the shower confinement. [*Id.*]. Although the grievances *may* have been rejected as time barred, Plaintiff's contention that they actually *would* have been is purely speculative in light of the GDC Standard Operating Procedures and *Bryant*. His failure to take advantage of the grievance process and the good cause exception will not excuse his failure to exhaust. Accordingly, the Court **ADOPTS** the Magistrate Judge's Recommendation on this claim.

## **CONCLUSION**

Having found that Plaintiff failed to exhaust his administrative remedies prior to bringing the instant lawsuit, the Court **ADOPTS** the Magistrate Judge's Report and Recommendation [Doc. 88] over Plaintiff's Objections and **GRANTS** Defendants' Motion to Dismiss [Doc. 38] and Amended Motion to Dismiss [Doc. 50]. This case is hereby **DISMISSED without prejudice**.[4]

---

[4] *See Bryant*, 530 F.3d at 1374-75 n.11 (dismissing without prejudice for failure to exhaust administrative remedies and noting, "We decide the case before us: one where dismissal was without prejudice and where neither party has evidenced that administrative remedies at [Georgia State Prison] are absolutely time barred or otherwise clearly infeasible."). There is no evidence that Plaintiff's administrative remedies are absolutely time barred given the good cause exception to the timeliness requirement in the GDC Standard Operating Procedures. Therefore, the Court dismisses Plaintiff's claims without prejudice.

**SO ORDERED**, this 12th day of September, 2018.

**S/ Tilman E. Self, III**
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**